IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Nina Y. Wang**

Case No. 26-cv-00925-NYW

A.T.,

　　Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ, in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
TODD LYONS, in his official capacity, and
TODD BLANCHE, in his official capacity,[1]

　　Respondents.

---

## MEMORANDUM OPINION AND ORDER
---

This matter is before the Court on the Verified Petition for Writ of Habeas Corpus (the "Petition"). [Doc. 1]. The Petition is fully briefed. [Doc. 15; Doc. 17]. For the reasons stated in this Order, the Petition is **GRANTED in part**.

### BACKGROUND

Petitioner A.T. ("Petitioner")[2] is a Honduran woman who has been present in the United States since 2019. [Doc. 1 at ¶¶ 1, 17]. She has been detained by the Department of Homeland Security since March 14, 2024, and she has not been given an individualized bond hearing. [Id. at ¶¶ 2, 33]. On December 19, 2024, she was granted a bona fide

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Markwayne Mullin is automatically substituted in as a Respondent as the Secretary for the Department of Homeland Security and Todd Blanche is substituted in as the Acting United States Attorney General.

[2] The Court granted A.T. leave to proceed in this case under her initials. *See* [Doc. 16].

determination and a stay of removal while the United States Citizenship and Immigration Services ("USCIS") adjudicates her application for a visa.  [*Id.* at ¶ 24].  Her claim for asylum was denied by an immigration judge, and an appeal of that denial is pending.  [*Id.* at ¶¶ 25–26].[3]

Relevant here, in 2022, A.T. was arrested on charges of child neglect after her partner was arrested for sexually abusing A.T.'s daughter.  [*Id.* at ¶ 19].  A.T. alleges that "[a]fter six months in jail, [she] signed a plea deal, believing this would allow her to reunite with her children."  [*Id.* at ¶ 20].  A.T. was sentenced to four years of parole.  [*Id.*].  The day that A.T. was released from jail, she was detained by ICE.  [*Id.*].

Petitioner alleges that "Respondents incarcerate [her] pursuant to 8 U.S.C. § 1226 but have never made a threshold determination as to whether her detention falls under § 1226(a), discretionary detention, or § 1226(c), mandatory detention."  [*Id.* at ¶ 54].  She asserts that no matter the statute authorizing her detention, "they all lead to the same result:  [her] detention is unlawful."  [*Id.* at ¶ 59].

A.T. raises three claims in her Petition.  First, she asserts a claim under the Administrative Procedure Act ("APA"), arguing that her detention violates the APA because it is arbitrary, capricious, an abuse of discretion, or otherwise unlawful.  [*Id.* at ¶¶ 60, 154–59].  Her second claim alleges a violation of her Fifth Amendment procedural due process rights, arguing that her detention has been unreasonably prolonged and is

---

[3] A declaration from ICE deportation officer Eric Danko states that the immigration judge "ordered Petitioner removed to Honduras" in this same order.  [Doc. 15-2 at ¶ 40].  Petitioner's Petition does not make any mention of an order of removal.  *See* [Doc. 1].  No Party has provided the Court with a copy of the immigration judge's order.  The Court notes that because the immigration judge's order of removal has been appealed, *see* [Doc. 15-2 at ¶ 42], the removal order "is not administratively final," [*id.* at ¶ 47].

therefore unconstitutional.  [*Id.* at ¶¶ 6, 160–63].  And her third claim asserts that her detention violates her Fifth Amendment substantive due process rights because it is punitive in nature, is not reasonably related to a legitimate purpose, and because it is excessive and indefinite in nature.  [*Id.* at ¶¶ 61, 164–67].  As for relief, Petitioner requests, among other things, that this Court order Respondents to immediately release her or, alternatively, provide her a bond hearing.  [*Id.* at 48].

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

In her Petition, A.T. contends that she is detained pursuant to one of two statutory provisions:  8 U.S.C. § 1226(a) or 8 U.S.C. § 1226(c).  *See* [Doc. 1 at ¶¶ 45–46].  She argues that Respondents "have never made a threshold determination as to whether her detention falls under" §§ 1226(a) or (c), but argues that no matter what statutory provision provides the basis for her detention, her detention is nevertheless unlawful.  [*Id.* at ¶¶ 54, 59].  In their Response, Respondents argue that Petitioner is actually "mandatorily detained pursuant to 8 U.S.C. § 1225(b), . . . which does not afford her a bond hearing."

[Doc. 15 at 2].  They also state that they "recognize that this Court is likely to hold that Petitioner is detained pursuant to 8 U.S.C. § 1226(a)," so they "do[] not address Petitioner's arguments for release under 8 U.S.C. § 1226(c)."  [*Id.* at 2–3].  Indeed, Respondents do not respond to or engage with Petitioner's substantive arguments about the constitutionality of her prolonged detention.  *See generally* [*id.*].

The Court first addresses the applicable statutory framework before turning to the Parties' arguments.

## I.    Statutory Framework for Detention

Sections 1225 and 1226 govern detention of noncitizens prior to a final order of removal.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).  Section 1226 "sets forth 'the default rule' for detaining noncitizens 'already present in the United States.'"  *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382-MSN-WEF, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting *Jennings*, 583 U.S. at 303).  Section 1226(a) permits, but does not require, the Attorney General to detain noncitizens pending removal proceedings. *Jennings*, 583 U.S. at 303; 8 U.S.C. § 1226(a)(1)–(2) (the Attorney General "*may* continue to detain" or "*may* release" the noncitizen (emphasis added)).  Section 1226(a) thus establishes a discretionary framework for the detention of noncitizens pending removal proceedings.

Section 1226(c), on the other hand, contemplates mandatory detention for certain individuals.  *See* 8 U.S.C. § 1226(c).  The statute creates a "special rule" for individuals who have committed certain dangerous crimes and those who have connections to terrorism," mandating that such individuals "must be detained without a bond hearing until the question of their removal is resolved."  *Nielsen v. Preap*, 586 U.S. 392, 396 (2019).

"The Supreme Court has held that it is constitutional to detain individuals pursuant to § 1226(c) without a bond hearing during removal proceedings." *Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1192–93 (D. Colo. 2024) (citing *Demore v. Kim*, 538 U.S. 510, 531 (2003)).

Section 1225(b) "supplement[s] § 1226's detention scheme." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1246 (W.D. Wash. 2025) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022)). Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission." *Jennings*, 583 U.S. at 297.

Under 8 U.S.C. § 1225(b)(1), "certain applicants for admission who are deemed inadmissible are subject to expedited removal, unless they express a fear of persecution or an intent to apply for asylum." *Guerrero Orellana v. Moniz*, 802 F. Supp. 3d 297, 304 (D. Mass. Oct. 3, 2025), *appeal docketed*, No. 25-2152 (1st Cir. Dec. 3, 2025); *see also* 8 U.S.C. § 1225(b)(1)(A)(i) ("If an immigration officer determines that an alien . . . who is arriving in the United States or described in clause (iii) is inadmissible . . ., the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."). Section 1225(b)(2) provides, in relevant part, that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

Under § 1225(a)(1), an "applicant for admission" is

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters).

Absent an exception for urgent humanitarian reasons not implicated in this case, "detention under § 1225(b)(2) is considered mandatory," and "[i]ndividuals detained under § 1225 are not entitled to a bond hearing." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (citing *Jennings*, 583 U.S. at 297).

In sum, "U.S. immigration law authorizes the Government to detain certain [individuals] *seeking admission into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [individuals] *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289 (emphasis added).

## II.    Petitioner's Detention

Based on Respondents' decision to "not address Petitioner's arguments for release under 8 U.S.C. § 1226(c)," [Doc. 15 at 3], and the fact that they *do not argue* that Petitioner is detained under § 1226(c), *see generally* [*id.*], Respondents have waived any argument that A.T. is detained under § 1226(c), *see Ramos v. Dedos*, No. 1:26-cv-00264-KWR-JHR, 2026 WL 555338, at *2 (D.N.M. Feb. 27, 2026) (by not arguing that the petitioner was detained pursuant to a specific statutory provision, the government waived any argument that he was detained under that provision). Therefore, the Court cannot and does not conclude that Petitioner is detained under § 1226(c).

That leaves § 1226(a) or § 1225(b). Respondents contend that Petitioner is "subject to mandatory detention under 8 U.S.C. § 1225(b)," [Doc. 15 at 3 (emphasis omitted)], without any argument explaining whether they purport to detain Petitioner under

6

§ 1225(b)(1) or § 1225(b)(2) or any analysis of the different requirements of those sections, *see* [*id.*].  Respondents have thus arguably waived their arguments under either subsection.  *Ramos*, 2026 WL 555338, at *2.

Nevertheless, the Court will address, and reject, Respondents' argument that Petitioner is detained under § 1225(b).  Notably, Respondents acknowledge that "this Court has consistently rejected Respondents' interpretation of the relevant legal provisions" and concede that "the facts of this case are not materially distinguishable from [the Court's prior rulings] for purposes of the Court's decision on the legal issue of whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)."  [Doc. 15 at 4].

Indeed, this Court has already rejected Respondents' interpretation of § 1225(b)(2)(A).  *See Loa Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *5 (D. Colo. Oct. 22, 2025) ("[F]ederal courts have overwhelmingly rejected Respondents' 'broad interpretation of section 1225(b)(2).'" (collecting cases)).[4]  In *Loa Caballero*, this Court reviewed a similar habeas petition filed by a noncitizen who had resided in the United States for nearly 20 years before he was detained by ICE.  *See id.* at *1.  Like Petitioner here, the Government detained the petitioner in *Loa Caballero*

---

[4] In addition to this Court's ruling in *Loa Caballero*, a majority of other judges in this District have concluded that § 1225(b)(2)(A) does not apply to noncitizens similarly situated to Petitioner, who have been present in the country for some time and are not actively "seeking admission."  *See, e.g.*, *Mendoza Gutierrez v. Baltasar*, No. 25-cv-02720-RMR, 2025 WL 2962908 (D. Colo. Oct. 17, 2024) (Rodriguez, J.), *appeal docketed*, No. 25-1460 (10th Cir. Dec. 16, 2025); *Moya Pineda v. Baltasar*, No. 25-cv-02955-GPG, 2025 WL 3516291 (D. Colo. Oct. 20, 2025) (Gallagher, J.); *Nava Hernandez v. Baltazar*, No. 25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025) (Sweeney, J.); *Arredondo v. Baltazar*, No. 25-cv-03040-RBJ, 2025 WL 4083607 (D. Colo. Oct. 31, 2025); *Florez Marin v. Baltazar*, No. 25-cv-03697-PAB, 2025 WL 3677019 (D. Colo. Dec. 18, 2025) (Brimmer, J.); *Aleman Hernandez v. Baltazar*, No. 25-cv-03688-SKC-SBP, 2025 WL 3718159 (D. Colo. Dec. 23, 2025) (Crews, J.); *Garcia Abanil v. Baltazar*, --- F. Supp. 3d ----, 2026 WL 100587 (D. Colo. Jan. 14, 2026) (Martínez, J.).

without a bond hearing and asserted that § 1225 mandated his detention.  *See id*.  The Court disagreed, emphasizing that § 1225(b)(2)(A) only provides for mandatory detention of noncitizens "seeking admission" to the country.  *Id.* at *6.  "The plain meaning of the phrase 'seeking admission' requires that the applicant must be presently and actively seeking lawful entry into the United States."  *Id.*  Thus, noncitizens who are merely "present"—and have been for "years upon years" without obtaining legal status—are not "seeking admission" under § 1225(b)(2)(A).  *Id.* (quoting *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 781 (E.D. Mich. 2025)).  Interpreting § 1225(b)(2)(A) to mandate detention for all "applicants for admission" would render the "seeking admission" language superfluous.  *Id.* at *7.  The Court concluded that both the plain text of § 1225 and applicable canons of statutory interpretation demonstrated that the petitioner in *Loa Caballero* was detained under § 1226, not § 1225.  *See id.* at *5–8.  The Court has since reaffirmed its ruling in *Loa Caballero* in several other similar habeas cases.  *See, e.g.*, *Briales-Zuniga v. Baltazar*, No. 25-cv-03439-NYW, 2026 WL 35227, at *4 (D. Colo. Jan. 6, 2026); *Bautista v. Noem*, No. 26-cv-00272-NYW, 2026 WL 532427, at *4 (D. Colo. Feb. 26, 2026).

Insofar as Respondents' argument could be construed as an assertion that Petitioner is detained under § 1225(b)(1), Respondents do not explain how Petitioner could reasonably be considered a person "arriving in the United States" under the plain language of the statute.  *See* 8 U.S.C. § 1225(b)(1)(A)(i); *see also* [Doc. 15].  The Court's above analysis applies in a similar manner to any assertion that Petitioner is detained under § 1225(b)(1).  *See Qasemi v. Francis*, No. 25-cv-10029-LJL, 2025 WL 3654098, at *6 (S.D.N.Y. Dec. 17, 2025) (petitioner was not "arriving in the United States" under

§ 1225(b)(1) because he had "already arrived, was paroled, entered, and ha[d] . . . been present in the United States for over a year").

Accordingly, consistent with the Court's prior rulings and the weight of authority in this District, the Court concludes that neither § 1225(b)(1) nor § 1225(b)(2) authorizes Petitioner's detention. The "default rule" of discretionary detention under § 1226(a) therefore applies. *See, e.g.*, *Quispe-Ardiles*, 2025 WL 2783800, at *5, *7. And because Respondents have not provided Petitioner the required bond hearing, Petitioner's continued detention without a bond hearing violates her due process rights. *See, e.g.*, *Garcia Abanil v. Baltazar*, --- F. Supp. 3d ----, 2026 WL 100587, at *6–7 (D. Colo. Jan. 14, 2026); *Lopez-Campos*, 797 F. Supp. 3d at 784–85.

## III.    Appropriate Remedy

Petitioner's primary requested relief is a Court order directing Respondents to immediately release her. [Doc. 1 at 47]. She argues that "there is no evidence that [she] is either a danger or a flight risk" because "DHS has granted [her] a [bona fide determination] for her T visa—meaning the agency has already reviewed [her] entire history, including her sole criminal contact, and determined she is not a public danger." [*Id.* at ¶ 105]. She also asserts that there is no evidence that she is a flight risk because "[h]er pending T visa with [a bona fide determination] gives her a strong incentive to follow through with her immigration proceedings to obtain legal status and remain in the country where two of her children, one of whom is a U.S. citizen, reside." [*Id.*].

In their Response, Respondents assert that "[i]f the Court holds that Petitioner is detained under 1226(a), the appropriate relief is a bond hearing before an immigration judge." [Doc. 15 at 5 (emphasis omitted)]. They assert that "[m]ultiple decisions in the

District of Colorado have recognized this principle," but they do not explain why a bond hearing is the appropriate remedy in this particular case or why immediate release is unwarranted.  [*Id.*].

Petitioner staunchly disputes that a bond hearing will provide sufficient relief.  She argues, among other things, that (1) a bond hearing is "the most common remedy for procedural due process claims," but is "not the typical remedy for the substantive due process or APA claims [she] raises," [Doc. 17 at 6 (emphasis omitted)]; (2) the Court should not stop its analysis at the procedural due process claim but should instead adjudicate all of her claims, [*id.* at 6–7]; and (3) she is neither a flight risk nor a danger to the community, so release is appropriate, [*id.* at 8–9].  Alternatively, A.T. argues that if the Court orders a bond hearing, it should hold the hearing itself, [*id.* at 9–10], and should also order that Respondents bear the burden of justifying A.T.'s detention, [*id.* at 10–11].[5]

For the following reasons, the Court agrees with Petitioner that, based on the unique circumstances of this case, a bond hearing would not adequately remedy the constitutional violations arising out of Petitioner's prolonged detention without a bond hearing.  Immediate release is therefore appropriate.

First, Petitioner has been detained without a bond hearing for over two years.  [Doc. 1 at ¶ 2].  This means that, based on Respondents' disclaimer of detention under

---

[5] Petitioner also argues that because Respondents have not "produce[d] the requisite warrant by the Attorney General justifying [her] detention," they have "provided no evidence at § 1226(a) affords detention authority," so her detention is not justified under *any* statute.  [Doc. 17 at 7–8].  But Petitioner did not argue in her Petition that her original detention lacked the warrant required under § 1226(a), *see* [Doc. 1], so Respondents had no occasion to produce a warrant in their response.  Moreover, Petitioner does not explain why the warrant contained in her exhibits, *see* [Doc. 1-2 at 7], does not meet the requirements of § 1226(a).

§ 1226(c) and this Court's determination that Petitioner is detained under § 1226(a), Petitioner has been *unconstitutionally* detained for over two years.  *See Garcia Abanil*, 2026 WL 100587, at *7 ("[C]ontinued detention without an individualized bond hearing necessarily violates [a person detained under § 1226(a)'s] Fifth Amendment right to due process."); *Martinez Torres v. Mullin*, No. 26-cv-01062-CYC, 2026 WL 860425, at *1 (D. Colo. Mar. 30, 2026) (same); *Arenas v. Noem*, No. 26-cv-00024-SBP, 2026 WL 317562, at *8 (D. Colo. Feb. 5, 2026) (same).  Respondents could have brought Petitioner before an immigration judge for a bond hearing at any point over the last two years, but they did not do so.  The Court is not inclined to prolong Petitioner's unconstitutional detention to permit Respondents to do what they could have done all along.

Petitioner's prolonged detention without a bond hearing raises serious constitutional concerns, as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects," and a detention scheme that "permit[s] indefinite detention" of a person "raise[s] a serious constitutional problem."  *Zadvydas*, 533 U.S. at 690.  Although "as a general matter, 8 U.S.C. § 1226(a) provides the government with discretion to detain noncitizens in removal proceedings, noncitizens still 'have a substantive due process right to be free of *arbitrary* confinement pending deportation proceedings.'"  *Alfaro Herrera v. Baltazar*, No. 25-cv-04014-CNS, 2026 WL 91470, at *7 (D. Colo. Jan. 13, 2026) (quoting *Doherty v. Thornburgh*, 943 F.2d 204, 209 (2d Cir. 1991)).  By detaining Petitioner for over two years without a bond hearing—and without any affirmative finding that Petitioner is a flight risk or a danger to the community—Respondents have arbitrarily detained her, which amounts to a violation of her substantive due process rights, too.  *See id.*

Respondents do not explain how a bond hearing would remedy this violation. *See* [Doc. 15].

Second, this case is materially different from the typical §§ 1225 and 1226 cases filed over the last several months. Petitioner asserts that the bona fide determination on her T-visa application "afforded her deferred action and a stay of removal." [Doc. 1 at ¶ 2]; *see also* [*id.* at ¶¶ 24, 56, 106; Doc. 1-2 at 10 ("[A]ny final order of removal, deportation, or exclusion is automatically stayed because your application has been determined to be bona fide.")]. Respondents do not dispute that Petitioner has been granted deferred action status or a stay of removal. *See* [Doc. 15].[6] "When deferred action status is approved, that means 'no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.'" *Marcos L. v. Noem*, No. 26-cv-00676-MJD-SGE, 2026 WL 327953, at *2 (D. Minn. Feb. 3, 2026) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999)), *recommendation adopted sub nom. Marcos L. v. Easterwood*, 2026 WL 331418 (D. Minn. Feb. 8, 2026). And "an ever-growing number of district courts across the country have concluded[] that an unrevoked grant of deferred action prevents removal." *Nevarez*

_____

[6] The bona fide determination letter states that "[s]ince USCIS has deemed your application boda fide, USCIS may consider you for deferred action. . . . To be considered for deferred action and employment authorization as a matter of discretion, you must submit a Form I-765, Application for Employment Authorization, under 8 CFR, 2741.12(c)(40) [sic] in accordance with form instructions." [Doc. 1-2 at 10]. But Respondents do not challenge Petitioner's assertions that she has been granted deferred action status, so any such argument has been waived. *See Juan M. v. Bondi*, No. 26-cv-00266-ECT-JFD, 2026 WL 129059, at *2 (D. Minn. Jan. 17, 2026) ("Respondents did not respond to Juan's arguments about deferred action, . . . meaning Respondents waived any challenge to these arguments.").

*Jurado v. Freden*, --- F. Supp. 3d ----, 2025 WL 3687264, at *8 (W.D.N.Y. Dec. 19, 2025) (collecting cases).

Petitioner asserts that "[t]he current average adjudication times for a T visa with a Bona Fide Determination is 2.25 years," [Doc. 1 at ¶ 92]; *see also Case Processing Times*, U.S. Citizenship and Immigration Services https://egov.uscis.gov/processing-times/ (last accessed April 9, 2026) (stating that "80% of cases are completed within 29 months"), and Respondents do not dispute this assertion, *see* [Doc. 15]. Because Petitioner's detention appears to be indefinite, and it is likely she will remain in deferred action status for at least another two years, she "is being held in indefinite detention not authorized by law, and [s]he is consequently entitled to immediate release." *Chavez Rascon v. Noem*, No. 2:26-cv-00161-RJS, 2026 WL 800684, at *4 (D. Utah Mar. 23, 2026) ("Because Chavez still possesses deferred action status, his detention appears to be indefinite and therefore requires release."); *Zadvydas*, 533 U.S. at 690.[7]

Third, Petitioner asserts that immediate release "is appropriate when the petitioner has been subject to some prior screening with no findings of flight risk or danger." [Doc.

---

[7] In other statutory contexts, courts have concluded that a person's detention, if extended too long, can violate the detainee's due process rights simply due to its length. *See, e.g.*, *Martinez*, 760 F. Supp. 3d at 1193 ("Several federal appellate courts have concluded that, at some point, prolonged detention under § 1226(c) without a bond hearing violates the Due Process Clause of the Fifth Amendment."); *Zadvydas*, 533 U.S. at 701 (recognizing that a six-month detention period after an order of removal is issued is presumptively reasonable, but explaining that that presumption may be rebutted if there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and the government does not rebut that showing). Although these cases deal with a different statute than the one authorizing Petitioner's detention here, they provide important guidance on the constitutional concerns arising out of Petitioner's prolonged detention. *See Rascon*, 2026 WL 800684, at *4 (recognizing that although *Zadvydas* concerned detention under 8 U.S.C. § 1231, not § 1226, "the similar discretionary language of the statutes makes the constitutional concerns applicable" in a § 1226 case).

17 at 8–9]; *see also* [Doc. 1 at ¶¶ 105–06 (Petitioner asserting that, through the bona fide determination, DHS "determined that [she] is not a public danger")]; *id.* at ¶ 117 ("USCIS . . . found that [Petitioner] did not present public safety concerns and granted her the [bona fide determination].")].  The Court does not entirely agree with Petitioner's reading of the record.  The bona fide determination letter states that the results of A.T.'s initial background check "are complete, have been reviewed, and do not present national security concerns."  [Doc. 1-2 at 10].  A finding that A.T.'s application did not present *national security* concerns is not necessarily equivalent to a finding that A.T. does not present a danger to her immediate community.  But still, courts have relied on this finding in determining that immediate release is appropriate.  *See Marcos L.*, 2026 WL 327953, at *3.  And Respondents' argument against immediate release is nothing more than a perfunctory assertion that a bond hearing is the "appropriate" remedy, without any actual explanation as to how a bond hearing provides an adequate remedy for the violation of Petitioner's constitutional rights in this action that is an outlier to the heartland of these immigration habeas appeals.  [Doc. 15 at 5].  Respondents do not argue that immediate release is inappropriate due to the risk of flight or dangerousness presented by Petitioner or identify any evidence specific to this Petitioner that needs to be weighed by the immigration judge in the first instance, *see* [*id.*].  If such a risk or evidence were known to Respondents, the Court expects that Respondents would have mentioned it in their brief.

"[I]n the context of deferred action recipients, district courts have found both immediate release and a bond hearing to be appropriate remedies."  *Santiago v. Noem*, No. 25-cv-00361, 2025 WL 2792588, at *13 (W.D. Tex. Oct. 2, 2025).  "Habeas is at its core a remedy for unlawful executive detention," and "[t]he typical remedy for such

detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).  Having found that Petitioner's detention violates her substantive and procedural due process rights, and based on the considerations discussed above, the Court concludes that prolonging Petitioner's unconstitutional detention by ordering a bond hearing would not remedy the violation of her constitutional rights.  Accordingly, the Court will order Respondents to immediately release Petitioner.[8]  Due to the <u>exceptional and unique circumstances of this case</u> and this Petitioner, Respondents are **DIRECTED** to transport A.T. back to her place of residence within **seven days** from the entry of this Order, at their own expense, and immediately upon effectuating A.T.'s transfer, Respondents shall release her from custody.  *See Diallo v. Baltazar*, No. 25-cv-3548-SKC, 2026 WL 237296, at *3 (D. Colo. Jan. 29, 2026) (ordering the petitioner's immediate release but ordering that the petitioner "shall remain in Respondents' temporary custody for the sole purpose of Respondents effectuating his return to Newark, New Jersey").

### CONCLUSION

For the reasons set forth above, **IT IS ORDERED** that:

(1)     The Verified Petition for Writ of Habeas Corpus [Doc. 1] is **GRANTED in part**;

(2)     Due to the <u>exceptional and unique circumstances of this case</u> and this Petitioner, Respondents are **DIRECTED** to transport A.T. back to her place

---

[8] Petitioner also requests that the Court "enjoin Respondents from imposing additional indefinite conditions of release, such as a GPS monitor or check-ins with ICE" and to "enjoin and restrain Respondents from re-detaining Petitioner unless they bear the burden of proof and demonstrate by clear and convincing evidence at a pre-deprivation bond hearing before an impartial adjudicator that [s]he is a flight risk or a danger to the community."  [Doc. 1 at 47].  These requests are not supported by citations to legal authority or developed argument, so the Court declines to order this additional relief.

of residence within **seven days** from the entry of this Order, at their own expense, and immediately upon effectuating A.T.'s transfer, Respondents shall **RELEASE** her from custody.  Respondents shall return any and all of Petitioner's belongings in their care, custody, or control;

(3)    The Clerk of Court is **DIRECTED** to place [Doc. 1-2] under Level 1 Restriction, given that it contains references to A.T.'s full name; and

(4)    On or before **April 23, 2026**, the Parties shall file a joint status report informing the Court of the status of A.T.'s release and whether any additional proceedings in this matter are required.

DATED:  April 9, 2026                                     BY THE COURT:

_____
Nina Y. Wang
United States District Judge